UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04-CV-400-H

UNITED STATES OF AMERICA, *ex. rel.*

                                                                    PLAINTIFFS

BONNIE SCHAEFER

V.

CONTI MEDICAL CONCEPTS, INC.,                           DEFENDANTS
ANTHONY CONTI, AND
VICTORIA CONTI

**MEMORANDUM OPINION**

        In this *que tam* action originally brought by Bonnie Schaefer, the United States seeks

recovery from Defendants under the False Claims Act ("the FCA") for their improper billing of

medical back braces to Medicare and Medicaid.  In essence, the government claims that

Defendants over-billed for back braces they provided to patients from 1999-2003 by utilizing an

improper billing code and that Defendants acted with reckless disregard of the truth or falsity of

the claims submitted.  The case is set to for trial beginning January 11, 2010, and the United

States has moved for partial summary judgment and in limine to exclude certain evidence.  The

Court will address each in turn.

**I.**

        Defendant Conti Medical Concepts, Inc. ("CMC"), was a Kentucky Corporation in the

business of supplying durable medical equipment, such as back braces.[1]  Anthony Conti was the

president of CMC and is married to Victoria Conti.  Mrs. Conti worked for CMC on a regular

---

[1] The company is no longer in business, largely as a result of a government raid and subsequent criminal
proceedings involving the same facts as this case.

1

basis performing a variety of job functions.  She managed the books of the company and, at times, submitted claims to insurance companies including Medicare and Medicaid.  In 2006, Mrs. Conti signed CMC's annual report as the company's vice-president[2] and in 2004 she signed as CMC's president on Mr. Conti's Certificate of Incumbency and as a board member on a Certificate of Action of the Board of Directors of Conti Medical Concepts, Inc.  All of those signatures post-date the billing period in question and Mrs. Conti contends that she was not an officer or director of CMC at any relevant time.

The essential issue in this case is the method of billing Medicare and Medicaid for medical equipment that CMC supplied to patients.  Like most medical providers, CMC submits its bills on a standard form called a "HCFA 1500."  These forms have spaces for codes that identify the products provided and the insurance companies, including Medicare and Medicaid, have set amounts that they pay for different codes.  Thus, the code represents the product received and dictates the payment to the provider.

The relevant medical equipment in this case is a back brace called "System-Loc."  The brace consists of a front and back piece that join around the patient's body to create a v-shaped brace.  CMC provided at least 734 System-Loc braces to patients on government insurance programs from 1999 to 2003.  For each brace, CMC submitted a HCFA 1500 with the billing code L0565.  Medicare and Medicaid reimburse providers $874.04 per brace under this code.  However, the United States contends that the proper coding of the System-Loc brace from 1999-

---

[2] However, the report lists Anthony Conti as the sole officer of the company.

2

2003 was L0515 with the miscellaneous code L1499.[3]  Bills submitted with these codes are reimbursed at only $509.22 per total brace.

The evidence as to the proper coding points in several directions.  Defendants contend that there was significant confusion among medical providers about the proper coding of the System-Loc brace from 1999-2003.  Defendants cite to trial testimony from a criminal matter involving these same facts stating that Medicare and Medicaid did not officially assign a code to the System-Loc brace until July 3, 2003.  Moreover, Defendants assert that a representative of Medicare and Medicaid reviewed Defendants' billing policies and informed them everything was being done properly.  However, a patient status form approved by one of Defendants' employees indicates that in a March 16, 2000, phone call to "HCPCS"[4] Defendants were informed that the proper codes for the "V-Loc" brace[5] were L0515 and L1499.

On the other hand, the government argues that at all relevant times the L0515-L1499 combination was the only proper coding.  As evidence, the government cites a 1999 letter to the System-Loc manufacturer from the national group that assigns codes stating that the L0515-L1499 combination is the proper method for billing the System-Loc brace despite the manufacturer's request that the coding be changed to L0565.  The manufacturer of the System-

---

[3] In essence, the L0515 code is used for the back portion of the brace and the L1499 miscellaneous code is used for the front portion of the brace.  The two codes combined result in a reimbursement for the full System-Loc product.

[4] HCPCS stands for Healthcare Common Procedure Coding System, which is the general label for the coding numbers used in healthcare billing.  It is unclear whether Defendants called the national group that assigns HCPCS codes or some other entity.

[5] "V-Loc" was the name of a similar brace manufactured prior to the System-Loc.  At the hearing, the parties informed the Court that the System-Loc brace serves the same function as the V-Loc brace but has at least one additional feature.  The government contends that the CMC employee was actually calling about a System-Loc brace, not a V-Loc brace.

3

Loc brace would inform medical providers, if they asked, that the L0515-L1499 codes were the proper method for billing its product.  However, there is no physical evidence indicating that the manufacturer ever sent notice of the proper coding methods to CMC or that CMC ever inquired with the manufacturer regarding the proper codes.  Another letter was sent by the manufacturer to the group responsible for coding on behalf of Medicare in 2003 to request a change to the L0565 code, but that request was also denied and Medicare restated its position that L0515 with the L1499 miscellaneous code was the proper method of billing.

In addition to submitting bills with improper coding, the government contends that CMC altered medical records to induce higher payments from Medicare and Medicaid.  According to the United States, employees of CMC, at Mr. Conti's direction, altered prescriptions written for the V-Loc brace to call for a more expensive brace called a Pro-Fitt, which was properly billable under the L0565 code.  After altering the prescription, the government contends that CMC provided the patient with a System-Loc brace and billed for a Pro-Fitt brace.  Defendants directly dispute this contention.  While Defendants agree that some prescriptions were changed from V-Loc to Pro-Fitt, Defendants contend that this was done because the V-Loc was no longer being manufactured and Defendants believed that the Pro-Fitt was the proper brace for Medicare and Medicaid patients.  Defendants assert that all patients received the brace for which the insurance companies were billed and there is no significant evidence from the government to the contrary.

However, on July 18, 2007, Mr. Conti pled guilty to the following criminal count:

> On or about August 12, 2003, in the Western District of Kentucky, Jefferson County, Kentucky, the defendant, ANTHONY J. CONTI, knowingly and willfully made and caused to be made a false statement and representation of material fact for use in determining rights to a payment under a Federal health care program as that term is defined in Title 42, Units States Code, Section 1320a-7b(f).  That is, an employee of Conti Medical Concepts, based on policy and procedure established by defendant,

4

> ANTHONY J. CONTI, altered a prescription for a patient, V.F., which prescription was submitted to Medicare in support of its request for payment relating to Medicare beneficiary, V.F.

(emphasis in original).  The plea agreement leading to this plea was reached after the government presented its evidence at the criminal trial.  In return for dropping all other charges, Mr. Conti pled guilty to a misdemeanor for one count of altering prescriptions and was forced to pay a $100 fine.  Additionally, Mr. Conti surrendered any right to the contents of a Medicare escrow account, totaling approximately $79,279.35.[6]  There was no evidence that this was the actual damage done as a result of the falsification of V.F.'s prescription and no findings by the court as to actual damages.  CMC, as an entity, also pled guilty to a felony for the same acts related to a different patient.  Because the company was no longer in existence and had no assets, restitution from CMC was not awarded.  The government dropped all charges against Mrs. Conti.

## II.

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(c).  "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *Id.*  "The moving party has the 'initial responsibility of informing the district court of the basis for its motion, and identifying those portions' of the record showing an absence of a genuine issue of fact."  *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Then "the non-moving party must come

---

[6] Apparently this was the amount believed to be in the escrow account.  In reality, the account contained slightly less and Mr. Conti personally paid the difference.  The court labeled this amount as a restitution award.

5

forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). Important to this case, "summary judgment is likely to be inappropriate in cases where the issues involve intent." *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988) (quotation omitted). However, such a statement does not mean that summary judgment for the plaintiff is impermissible where the claim involves a scienter element. *See, e.g., United States v. Midwest Specialties, Inc.*, 142 F.3d 296 (6th Cir. 1998) (affirming a grant of summary judgment to the government under the False Claims Act, the same statute in issue here).

### III.

The government brings this case under the False Claims Act ("FCA") based on two distinct factual allegations: (1) submission of improperly coded bills violated 31 U.S.C. § 3729(a)(1); and (2) altering prescriptions to receive reimbursement from government insurance programs violated 31 U.S.C. § 3729(a)(2). These two provisions provide independent bases for liability. 31 U.S.C. § 3729(a)(1) provides liability for any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval." § 3729(a)(2) provides liability for any person who "knowingly makes, uses, or caused to be made or used, a false records or statement to get a false or fraudulent claim paid or approved by the government." The statute goes on to define its terms.

> For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information - (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

6

31 U.S.C. § 3729(b).  Liability under the FCA requires a civil penalty for each violation plus three times the amount of actual damages.  31 U.S.C. § 3729(a).

### A.

The government argues that summary judgment is appropriate on its action for submission of false claims based on 31 U.S.C. § 3729(a)(1) because the material facts making up the elements of the action are undisputed.  In essence, the government must prove two elements: (1) that Defendants submitted, or caused to be submitted, false or fraudulent claims to the government; and (2) that Defendants took these actions "knowingly."  While the government has certainly presented strong evidence of its claim, the Court does not believe that summary judgment is appropriate.

### 1.

There is very little factual dispute as to the first element.  The national organization responsible for determining proper billing codes wrote a letter in 1999 to the manufacturer of the System-Loc back brace stating that the proper coding for the brace is the L0515- L1499 combination.  That determination was affirmed by the group responsible for setting Medicare's billing codes in 2003.  At all relevant times, the manufacturer appears to have believed that L0515 and L1499 represented the proper method of billing the System-Loc brace.  Moreover, Defendants have offered almost no evidence that the L0565 code was proper or the L0515 and L1499 codes were improper.  While Defendants contend that the written description for both codes seems to fit the System-Loc brace, there is no evidence to refute the government's assertion that the L0515-L1499 combination was the coding method required by Medicare and Medicaid.  Finally, it is agreed that Defendants billed the System-Loc brace under the L0565

code as a part of the policy put in place by Mr. Conti.  Thus, it is apparent that Defendants submitted false claims to the government.

2.

The second element requiring "knowing" actions is the central point of contention here. Under the FCA, the government must prove, at a minimum, that Defendants acted with reckless disregard of the truth or falsity of the claims they submitted.  While this standard certainly does not require proof of a specific intent to defraud the government, it does require some affirmative showing by the government.  Mere negligence is insufficient.  *See Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1478 (9th Cir. 1996) (cited with approval by *U.S. ex rel. Swafford v. Borgess Medical Center*, 24 Fed. Appx. 491 (6th Cir. 2001)).

As evidence of Defendants' reckless disregard of the truth, the government places great reliance on the letter to the brace manufacturer that identified L0515 and L1499 as the proper method of billing the System-Loc brace.  The government argues that if anyone contacted the manufacturer to find out the correct billing codes, the manufacturer would have told them to use L0515 and L1499.  However, there is no evidence that Defendants ever contacted the manufacturer.  While the government claims that the manufacturer routinely sent notice of the proper billing codes with the first shipment of the braces, it has offered no evidence to support that contention.  If the manufacturer did send such statements, it is likely it would have records proving the statements were sent.  None have been presented to this Court.

The government argues, however, that there need not be proof that Defendants were actually told of the proper billing method by the manufacturer.  Rather, according to the government, Defendants failure to contact the manufacturer means that they failed to take

8

reasonable steps to ensure the validity of their billing procedures and, as such, acted with reckless disregard of the truth or falsity of their claims.  For this proposition, the government relies on *United States v. Krizek*, 111 F.3d 934 (D.C. Cir. 1997), and *United States v. Stevens*, 605 F. Supp. 2d 863 (W.D. Ky. 2008).  While both of these cases do indicate that a failure to take reasonable steps to ensure validity constitutes reckless disregard, the factual application of that standard is dramatically different from the facts of this case.

In *Krizek*, the defendants were a psychiatrist and his wife, who submitted the psychiatrist's bills to Medicare and Medicaid.  Like this case, the defendants were sued under the FCA for submitting excessive bills to the government.  However, in *Krizek* the Court held a three-week bench trial and determined that the defendants routinely billed for services in excess of 21 hours per day with occasional bills for services in excess of 24 hours per day.  The Court found the validity of this billing to be improbable, if not impossible.  Moreover, the defendants offered no evidence to establish that the services were legitimately provided.  Thus, the Court found the defendants acted with reckless disregard because they "failed utterly" to ensure the validity of their billing.  *Krizek*, 111 F.3d at 942.  As the Court stated, "even the shoddiest record keeping would have revealed that false submissions were being made - those days on which the Krizek's billing approached twenty-four hours in a single day."  *Id.*

This case is different than *Krizek*.  While it may have been advisable for Defendants to contact the manufacturer to ensure proper billing, a failure to do so does not rise to the level of utter failure to do anything as found in *Krizek*.  There, any person with common sense, could have realized that the records were false.  That cannot be said here.  The coding system for back braces is complicated.  The government admits that the written description for code L0565 found

9

in coding manuals appears to fit the System-Loc brace.  Moreover, Defendants have presented some evidence that they took reasonable steps to ensure the validity of their bills.  They claim that they used the same coding as Mr. Conti's previous employer, who had never had trouble billing for the brace under L0565.  Perhaps most importantly, Defendants assert that a Medicare ombudsman who came to their office to review practices in 1997 told them, while noting one minor and unrelated error in billing, that their procedures were proper.  These facts, combined with the apparent general confusion surrounding proper billing codes for back braces, certainly make the "knowing" element a jury question.

Likewise, *Stevens* does not ensure summary judgment for the government.  There, Dr. Stevens utilized a new machine to provide services for which no billing code had been set by Medicare or Medicaid.  When the insurance groups refused to pay Dr. Stevens, he turned his billing over to someone with absolutely no billing experience and the bills began to be paid.  The new biller admitted that he intentionally submitted false claims under a code for services that simply were not provided.  The question in *Stevens* was whether the doctor could be liable. Using the standard set forth in *Krizek*, Judge McKinley found that Dr. Stevens utterly failed to take any actions to ensure the validity of his claims.  Dr. Stevens admitted that he never reviewed the bills submitted, that he gave no guidance on the proper codes to use, and that had he reviewed the billing he would have recognized that the new biller was billing for services not rendered.  *Stevens*, 605 F. Supp. 2d at 868-69.  Again, this case presents different facts.  Mr. Conti set the coding based on his belief that L0565 was a proper code for the System-Loc brace. He did not exercise the form of deliberate ignorance as Dr. Stevens.

A common theme in *Krizek* and *Stevens* is that both doctors billed for services that

10

simply were not rendered and both doctors recognized that the billing was improper. Here, there is no dispute that back braces were provided to CMC's patients. The only dispute is what the proper billing code was for those braces. Reasonable jurors might reach different conclusions about whether Defendants failed to take reasonable steps to ensure the validity of their billing.

The government's better evidence on the knowing element is a patient status form filled out by one of CMC's employees in 2000. Notes indicate that the employee contacted Kentucky Medicaid to determine the proper codes for the "V-Loc" brace. The notes show that Medicaid informed the employee that the L0515-L1499 combination was appropriate. The government contends that this sheet proves Defendants acted with at least reckless disregard of the truth or falsity of their claims submitted under L0565. Again, the evidence strongly favors the government and may likely aid in getting a jury verdict. However, it does not warrant summary judgment. The document is for the "V-Loc" brace. While it may be that this was the term used for the System-Loc brace, the significance and meaning of the document is unclear. The Court will not grant summary judgment based on this one document of unknown significance.

## B.

With respect to its claim for falsification of records, the government relies exclusively on the guilty pleas of Mr. Conti and CMC entered in the criminal trial. 31 U.S.C. § 3731(d) provides,

> Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730.

11

There is no dispute that this action is brought under subsections (a) and (b) of section 3730 and that Mr. Conti and CMC each pled guilty to altering one prescription for one patient. Thus, the plain language of the statute requires this Court estop defendants from denying the elements of one claim of falsifying a prescription under 31 U.S.C. § 3729(a)(2). The only issue that remains is the extent of such estoppel.

First, the government contends that the guilty plea should estop the defendants from denying the elements of every claim of altering a prescription. Neither the statute nor the facts here support this conclusion. The Court is acutely aware of the reality behind this guilty plea. The government presented its entire case to the jury before this plea was entered. Without the deal, Mr. Conti faced felony charges, potential prison time, and significant monetary damages for which he would personally be liable. Yet, with the deal, Mr. Conti pled guilty only to a misdemeanor, served no prison or probation time, and merely surrendered the funds in an escrow account, possession of which he did not have. To say that this was a "good deal" for Mr. Conti may be a dramatic understatement. It also speaks to the weaknesses of the government's case. Such a guilty plea, which Mr. Conti undoubtedly would have been foolish to reject, should not, in fairness, preclude Mr. Conti from defending the government's allegations. The Court can reconcile this fairness interpretation and the demands of the statute. The statute requires estoppel only for claims "which involve the same transaction as in the criminal proceeding." *Id.* For Mr. Conti, that transaction was the altering of one prescription for a patient named "V.F." The statute does not require estoppel of any other defenses. Thus, for purposes of the trial, Mr. Conti will be estopped from denying the elements of that single claim. The Court will determine the appropriate damages arising from this one claim and enter judgment in favor of the

government at a later time.

The government cites *United States v. Stokes*, 640 F. Supp. 2d 927 (W.D. Mich. 2009), for the proposition that Mr. Conti should be estopped from denying the elements of all claims related to altering prescriptions.  In *Stokes*, the defendant was convicted of 17 counts of defrauding the government, but the subsequent civil trial sought recovery for 8,400 counts.  The court determined that the defendant was estopped from denying liability on all counts based on the guilty plea.  However, the court specifically noted that at the criminal trial, the jury was instructed that to find the defendant guilty it must find that "he devised a scheme to defraud a health care benefit program."  *Id.* at 930.  Moreover,

> the evidence at trial was not limited to the 17 executions alleged in the Superseding Indictment.  Instead it established that Stokes' regular practice for many years was to bill for [services not rendered]. . . . Because the evidence established an ongoing fraudulent scheme during the years in question, there is no basis to conclude that estoppel arising under 31 U.S.C. § 3731(d) or common law issue preclusion is limited to the 17 executions of which Stokes was convicted.

*Id.*  That type of evidence was not found in this criminal trial.  Thus, this Court will not apply estoppel to all claims.

Second, the government argues that Mrs. Conti is liable under the guilty plea of CMC because she was an officer of CMC and involved in the altering of prescriptions.  Another part of the plea agreement between the government, CMC and Mr. Conti was that all charges against Mrs. Conti would be dropped.  Further, Mrs. Conti disputes that she was an officer of the company at the relevant times.  The government has offered documents filed with the Kentucky Secretary of State where Mrs. Conti signed as a "Vice-President," but those documents also indicate that Mr. Conti was the sole officer of CMC and are dated from 2004-2006.  The government has offered no definitive evidence that Mrs. Conti was an officer or director of CMC

13

during the time period when alteration of prescriptions allegedly occurred.  Judgment against Mrs. Conti on these facts would be inappropriate.

## IV.

The government has also filed a motion in limine seeking to exclude certain evidence from trial.  The Court will address each objection individually.

First, the government seeks to exclude all testimony that Medicare and Medicaid changed billing codes and reimbursement amounts for the System-Loc and Pro-Fitt braces effective April 1, 2004 as irrelevant.  Essentially, on April 1, 2004, Medicare and Medicaid began reimbursing the System-Loc brace at approximately the same rate it was previously reimbursing braces billed under the L0565 code and reduced reimbursement for the Pro-Fitt brace to the level of the previous L0515-L1499 combination.  Defendants argue that the reason for the change was confusion regarding the proper billing of the System-Loc brace.  If Defendants are correct, the change and reasoning for it will certainly help establish Defendant's argument that their actions were not "knowing" under the statute.  Therefore, the Court will deny this motion subject to the testimony at trial.

Second, the government seeks to exclude any testimony that an ombudsman visited CMC in 1997 and informed them their billing procedures were proper.  The government claims this testimony is irrelevant for three reasons: (1) Defendants cannot recall the ombudsman's last name; (2) Defendant's can't recall whether the specific codes for the System-Loc brace were discussed; and (3) the visit predates the 1999 letter from the coding organization to the brace manufacturer identifying L0515 and L1499 as the proper coding for the System-Loc brace.  The government's objections go to the weight of the testimony, not its admissibility.  If Defendants

14

can convince the jury that an ombudsman informed them their billing methods were proper in 1997, it will likely go a long way in disproving the government's contention that Defendants acted with reckless disregard of the truth or falsity of the claims submitted.  Thus, the motion will be denied subject to the actual testimony given.

Third, the government seeks to exclude any testimony that charges against Mrs. Conti were dropped as a part of the plea deal as irrelevant.  The Court agrees that such testimony would not be helpful to the jury and may unfairly prejudice the jury in favor of Mrs. Conti.

Fourth, the government moves to exclude argument that Mr. Conti did not alter the prescription of a patient named "V.F."  As discussed above, 31 U.S.C. § 3731(d) estops Mr. Conti from making such an argument.  Therefore, the Court will sustain this motion.

Fifth, the government contends that the fact restitution was ordered in the criminal trial and the amount ordered and paid is irrelevant to this case.  The Court agrees and will sustain this motion.

Finally, the government seeks to exclude testimony that under the FCA any actual damages award will be trebled, civil penalties will be imposed and the restitution award will be used to offset damages.  These issues will not be helpful to the jury and, therefore, the motion will be sustained.

The Court will issue an Order consistent with this Memorandum Opinion.

cc:    Counsel of Record