UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04-CV-400-H

UNITED STATES OF AMERICA, *ex rel.*

                                                              PLAINTIFFS

BONNIE SCHAEFER

V.

CONTI MEDICAL CONCEPTS, INC.,                                 DEFENDANTS
ANTHONY CONTI AND
VICTORIA CONTI

## MEMORANDUM OPINION

This case involving alleged violations of the False Claims Act ("the FCA") was tried

before a jury January 11 - 15, 2010.  The Jury returned a verdict in favor of Defendants on every

count.  Plaintiff (the "Government") now moves for judgment as a matter law under Federal

Rule of Civil Procedure 59 on the unjust enrichment and alteration of documents claims.  In the

alternative, it moves for a new trial.  Finally, the Government asks for a judgment against

Defendant Anthony Conti based on the Court's determination in a December 17, 2009

Memorandum Opinion (DN # 97) that Mr. Conti was estopped from denying one count of

altering a prescription.  For the following reasons, the Court will deny the Government's motion

for judgment as a matter of law or, in the alternative, a new trial, but the Court will enter a

judgment against Mr. Conti on one count of altering a prescription.

## I.

The Government premises their argument for judgment as a matter of law or a new trial

solely on the testimony of James Patton, which the Government believes was false.  Mr. Patton,

a durable medical goods provider, was called by Defendants to testify regarding communications

he received from American Professional Bracing regarding the proper method of billing System-Loc back braces. Indeed, his *direct* examination was limited to precisely that issue. The Government does not contest any of that testimony. Rather, it contends that Mr. Patton's testimony on *re-cross* examination, which its *conducted*, was materially false and misled the jury. On re-cross examination, the Government repeatedly questioned Mr. Patton about whether and why he did not seek out a Medicare letter regarding the proper billing procedures for the System-Loc brace. Mr. Patton testified that he never asked for such a letter. After several questions about whether he was bound to Medicare's coding decisions, Mr. Patton finally said that he did not request the letter because Medicare was paying his claims under the L0565 code and they would have told him if that code was incorrect. In fact, according to Mr. Patton, he appealed approximately 200 cases where the Government "down-coded" his bills for the System-Loc brace and was successful. It is this testimony, elicited by the Government, to which it now objects.

The Government contends that the testimony related to the successful appeals was false and that without Mr. Patton's testimony, no evidence supported the jury's verdict with relation to the unjust enrichment claim and the alteration of documents claims. Following the jury verdict, a Government investigator went to Mr. Patton's home town to review documents related to his Medicare appeals. The investigator determined that Mr. Patton did, indeed, appeal several cases where the Government "down-coded" his bills for System-Loc braces. According to the investigator, Mr. Patton won those appeals because he submitted evidence that a Pro-Fitt back brace, which everyone agrees properly bills at code L0565, was provided to the patients instead of a System-loc brace. While this may indicate that Mr. Patton's testimony was *misleading*, it

does not show that it was materially false. In fact, Mr. Patton did pretty much what he said he did. He billed for a System-Loc brace, was down-coded, appealed that decision, and was successful. Certainly, Mr. Patton left out some crucial information about those appeals and the basis for his success and that information may have made for a strong impeachment had the Government known about it at trial. However, that does not entitle the Government to judgment as a matter of law or a new trial.

The Court bases its decision to deny the Government's motion on several factors. First, this is not a typical case where a party moves for judgment or a new trial because its opponent purposefully solicited false testimony. Rather, the Government itself elicited the allegedly false testimony. On re-cross examination, it counsel asked who was responsible for determining the proper codes for Medicare and asked whether Mr. Patton was bound by Medicare's decisions. It wasn't until counsel repeated this line of questioning that Mr. Patton testified that Medicare had paid him under L0565 following multiple appeals. While not directly on point with the Government's questions, Mr. Patton's testimony was not entirely non-responsive. By choosing to probe Mr. Patton's knowledge of Medicare billing and the proper codes for System-Loc braces, the Government seemed to invite Mr. Patton's testimony. To hold Defendants accountable for such actions at this stage would be unjust.

Second, the Government had possession of the information needed to determine the "falsity" of Mr. Patton's testimony long before this trial began.[1] Defendants identified Mr. Patton as a potential witness regarding the proper billing of the System-Loc back brace in their discovery materials. He was later identified in Defendants' witness list prior to trial. The

_____

[1] In fact, the Government used exclusively documents already in its control to uncover the alleged falsity of Mr. Patton's testimony.

Government acknowledged at trial that it knew Mr. Patton was under investigation for altering records and that search warrants had been served on his business. The Government could have deposed Mr. Patton and it could have examined the investigative records related to him. To hold Defendants accountable in these circumstances would be quite unjust.

Third, at the time the testimony was given, the Government knew that the SADMERC letter, which it considers dispositive of the issue of the proper code for the System-Loc brace,[2] identified L0515 with an L1499 modifier as the *only* proper method of billing the brace. With that letter in hand, the Government was certainly on notice that there was a possible error in Mr. Patton's testimony.[3] Yet, the Government took no immediate action to redress it through rebuttal testimony or through a brief recess to check the veracity of the testimony. Nor did the Government attempt to impeach Mr. Patton with the letter showing the impossibility of success in appealing through Medicare.[4]

Finally, the Court finds, as it did during trial, that there was sufficient evidence, even absent Mr. Patton's testimony regarding his appeals, to support a finding by the jury on all counts of the Complaint. The cross examination of the Government's witnesses clearly

_____

[2] Throughout the Government's brief it references a sentence from this Court's December 17, 2009 Memorandum Opinion noting that there appears no evidence indicating the bills were not false. According to the Government, that is the "law of the case" and Defendants should not be allowed to contest it. However, that sentence was certainly not the Court's finding in that opinion. In fact, the Court's finding was squarely against the Government; the Court largely denied the Government's motion for summary judgment. Rather, the sentence was an observation of the evidence before the Court on the motion. The evidence presented at trial, especially through the effective cross examination of Government witnesses, clearly refuted the Court's observation in its Memorandum Opinion. As such, there is no "law of the case" to be followed here.

[3] Indeed, the Government noted this at a bench conference with the Court.

[4] The discussion in the preceding two paragraphs is especially probative of the issue of a new trial. To be entitled to a new trial, the moving party must show that it "was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial." *Gordon v. U.S.*, 178 F.2d 896, 900 (6th Cir. 1949). Certainly, the Government cannot meet such a standard on the record before the Court.

established a great deal of confusion and secrecy regarding the proper billing codes for the System-Loc brace. In fact, the Government concedes that it never released its SADMERC letter or anything else with the proper billing code for the System-Loc brace to the general public. Primarily, the Government argued that had the Conti's called and asked about the proper code, then Medicare would have told them. The jury easily could have found, based on such evidence, that it was not "unjust" for Defendants to keep the monies paid them by Medicare and Medicaid, a finding which would allow the jury's verdict in favor of Defendants on the unjust enrichment claim.

## II.

Pursuant to the Court's December 17, 2009 Memorandum Opinion, the Government is entitled to a judgment against Mr. Conti on one count of altering a prescription to receive payment for a false or fraudulent claim from Medicare. The actual damages from that single count are $404.24. Pursuant to 31 U.S.C. § 3729(a), the Court must treble those damages, for a total of $1212.72, and award a civil penalty of not less than $5,500.00 and not more than $11,000.00. Given the outcome at trial on all similar counts, the Court will award only the minimum civil penalty. Thus, the Court finds that the Government is entitled to $6,712.72 from Mr. Conti based on his plea agreement in the criminal matter related to this case.

Mr. Conti argues that he should not be held liable because he has already paid $79,279.35 as part of a criminal restitution order in the criminal proceedings related to the events of this case. However, the FCA specifically permits civil recovery in addition to any criminal proceedings related to the same events. *See* 31 U.S.C. § 3731(d) (allowing a criminal conviction to form the basis of liability under the FCA). What is less clear is how much the restitution order

should offset the civil judgment.  Mr. Conti appears to argue that the entire civil judgment should be offset.  The Government contends that only the compensatory portion of the judgment should be offset.  The Court finds that the Government's analysis and rationale is appropriate.

The Court notes that our case is an unusual one.  In most cases, the restitution order is generally less than the Government's actual damages determined at a civil trial.  Thus, there is no question that the restitution award offsets only the compensatory portion of the civil judgment.  In our case, however, the Court narrowly crafted the civil judgment based on the realities of the criminal plea deal, resulting in a civil judgment that is significantly less than the restitution already paid.  Although it is clear that Mr. Conti has previously paid nearly $80,000.00, that payment was merely compensatory.  The civil judgment, on the other hand, reflects both compensatory damages and statutory fees.  As a general rule, one judgment should only offset another judgment to the extent the judgments serve the same purpose.  Thus, a restitution award for compensatory damages should offset only a civil judgment for compensatory damages.  The Court finds that the statutory fees serve a different purpose than the compensatory damages paid under the restitution award.  In *United States v. Bornstein*, 423 U.S. 303 (1976), the Supreme Court addressed how to calculate the then-applicable statutory doubling of damages where the defendant had previously paid restitution.  The Court held that,

> in computing the double damages authorized by the Act, the Government's actual damages are to be doubled before any subtractions are made for *compensatory* payments previously received by the Government from any source.  This method of computation, which maximizes the deterrent impact of the double-damages provision and fixes the relative rights and liabilities of the respective parties with maximum precision, best comports in our view with the language and purpose of the Act.

*Id.* at 316-17 (emphasis added).  Thus, the Court recognized the very different nature of compensatory damages and statutorily imposed fees.  Furthermore, the Court indicated that

subtractions should only be made for "compensatory" payments.

The Court also notes that Mr. Conti could well have crafted his plea deal to allow for a total set off. When dealing with a criminal claim of defrauding the Government, a defendant should be aware of the possibility of civil liability. In fact, the Complaint in this case was served on Defendants before any deal was reached in the criminal proceedings. By failing to account for the effect of a criminal plea on the civil proceedings, Mr. Conti did not guard against a civil judgment of fines and fees that could not be set off by the restitution paid.

With these principles in mind, the Court will subtract from the total judgment the compensatory component, $404.24, as it was previously paid under the criminal restitution order. Doing so leaves the Government entitled to a judgment of $6,308.48.

This Court will issue a final order consistent with this Memorandum Opinion.

cc:     Counsel of Record